PAUL ALAN LEVY, (D.C. Bar No. 946400)
(*pro hac vice* application forthcoming)
plevy@citizen.org
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, D.C. 20009
Telephone: (202) 588-7725

MATTHEW T. CAGLE (CA Bar No. 286101)
mcagle@aclunc.org
HANNAH M. KIESCHNICK (CA Bar No. 319011)
hkieschnick@aclunc.org
NICOLAS A. HIDALGO (CA Bar No. 339177)
nhidalgo@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-1478

*Attorneys for Movant J. Doe*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF DR. FREDRIC ESHELMAN FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782,<br><br>Movant J. Doe | Case No. 5:23-mc-80015-EJD<br><br>**MOVANT J. DOE'S NOTICE OF MOTION TO QUASH AND MOTION TO QUASH**<br><br>Date:  Thursday, August 24, 2023<br>Time:  9:00 A.M.<br>Judge: Hon. Edward J. Davila<br>      Courtroom 4, 5th Floor |

**NOTICE OF MOTION AND MOTION TO QUASH**

**PLEASE TAKE NOTICE** that pursuant to Federal Rule of Civil Procedure 45(d), on August 24, 2023, at 9:00 A.M. or as soon thereafter as this matter may be heard, in Courtroom 4, Fifth Floor, of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113, Movant J. Doe ("Doe") will, and hereby does, move to quash the subpoenas issued to Google LLC ("Google"), dated May 10, 2023, by Fredric Eshelman.

This Motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities in support thereof, the Declaration of Paul Alan Levy, the Declaration of J. Doe and all exhibits attached thereto, all pleadings and papers on file in this action, and such other matters as the Court may consider.

Dated: June 21, 2023                                          Respectfully submitted,

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA

Matthew T. Cagle
Email: mcagle@aclunc.org
Telephone: (415) 621-2493

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................................ 2

III.    ARGUMENT ............................................................................................................ 6

      A.      Eshelman would not be able to sue for defamation in the United States
            because the First Amendment protects Doe's anonymous criticisms ..................... 6

      B.      Section 1782 does not authorize Eshelman's attempted end run
            around the First Amendment ................................................................................ 10

           1.      The text of Section 1782 does not authorize the subpoenas. ................... 11

           2.      The Court should construe the text of Section 1782 to
                 avoid raising serious constitutional concerns ........................................... 12

      C.      The Court should deny Eshelman's misuse of Section 1782 as
            an attempt to circumvent the First Amendment and the demanding
            standard for protecting anonymous speakers. ...................................................... 13

           1.      Enforcing the subpoenas would allow the targets of criticism to
                 circumvent the United States's policy of protecting free speech ............. 13

            2.      Under the *Dendrite* / *Highfields* framework, Eshelman offers
                 no evidentiary basis for exposing Doe's identity and infringing
                 their First Amendment right to anonymous speech. ................................. 14

IV.     CONCLUSION ....................................................................................................... 19

1

## TABLE OF AUTHORITIES

2

**CASES:**

3
*Alvis Coatings v. John Does 1-10*,
    No. 3L94 CV 374-H, 2004 WL 2904405 (W.D.N.C. Dec. 2, 2004) ...................................... 17

4

*Balla v. Hall*,
5     59 Cal. App. 5th 652 (2021)............................................................................................ 8

6
*Barnes-Hind, Inc. v. Superior Ct.*,
7     181 Cal. App. 3d 377 (1986)............................................................................................ 7

8
*Biro v. Conde Nast*,
    807 F.3d 541 (2d Cir. 2015)............................................................................................ 10

9
*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*,
10     798 F.3d 113 (2d Cir. 2015)...................................................................................... 11, 12

11
*Columbia Ins. Co. v. seescandy.com*,
    185 F.R.D. 573 (N.D. Cal. 1999) ............................................................................... 7, 13

12
*Dendrite Int'l v. Doe No. 3*,
13     775 A.2d 756 (N.J. App. Div. 2001) ...................................................................... 12, 14, 15

14
*Does I thru XXIII v. Adv. Textile Corp.*,
    214 F.3d 1058 (9th Cir. 2000)........................................................................................ 16
15

16
*Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*,
    666 F.3d 1216 (9th Cir. 2012)........................................................................................ 12

17
*FCC v. Fox Television Stations, Inc.*,
18     556 U.S. 502 (2009) ...................................................................................................... 12

19
*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)........................................................................................................ 8

20
*Herring Networks, Inc. v. Maddow*,
21     8 F.4th 1148 (9th Cir. 2021)......................................................................................... 8, 9

22
*hey, Inc. v. Twitter, Inc.*,
    2023 WL 3874022 (N.D. Cal. June 6, 2022) ................................................................. 15
23

24
*Highfields Capital Mgmt., L.P. v. Doe*,
    385 F. Supp. 2d 969 (N.D. Cal. 2005) ................................................................. 9, 12, 14

25
*In re Anahara*,
26     No. 22-mc-80063-JCS, 2022 WL 783896 (N.D. Cal. Mar. 15, 2022)................................. 13

27
*In re DMCA § 512(h) Subpoena to Twitter, Inc.*,
    608 F. Supp. 3d 868 (N.D. Cal. 2022) ...................................................................... 15, 18

28

*In re Planning & Dev. of Edu., Inc.*,
  No. 21-mc-80242-JCS, 2022 WL 228307 (N.D. Cal. Jan. 26, 2022) ...................................... 13

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ................................................................................................... *passim*

*Iron Bar Holdings v. Cape*,
  — F. Supp.3d —, 2023 WL 3686793 (D. Wyo. May 26, 2023) ............................................. 4

*Khrapunov v. Prosyankin*,
  931 F.3d 922 (9th Cir. 2019) ........................................................................................... 11

*Leutheusser-Schnarrenberger v. Kogan*,
  No.18-mc-80171-JSC, 2018 WL 5095133 (N.D. Cal. Oct. 17, 2018) ................................... 11

*Makaeff v. Trump Univ.*,
  715 F.3d 254 (9th Cir. 2013) ............................................................................................ 10

*McIntyre v. Ohio Elections Comm.*,
  514 U.S. 334 (1995) ..................................................................................................... 1, 7

*Monge v. Univ. of Pa.*,
  Civ. No. 22-2942, 2023 WL 3692935 (E.D. Pa. May 26, 2023) ............................................ 8

*Music Grp. Macao Com. Offshore Ltd. v. Does*,
  82 F. Supp. 3d 979 (N.D. Cal. 2015) ............................................................................ 16, 18

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964). ................................................................................................ 7, 10, 13

*Org. for a Better Austin v. Keefe*,
  402 U.S. 415 (1971) ........................................................................................................... 7

*Partington v. Bugliosi*,
  56 F.3d 1147 (9th Cir. 1995) ............................................................................................... 8

*Planet Aid, Inc. v. Reveal*,
  44 F.4th 918 (9th Cir. 2022) ........................................................................................ 7, 8, 9

*Rancho Publications v. Superior Court*,
  68 Cal. App. 4th 1538 (1999) ............................................................................................ 16

*Reno v. ACLU*,
  521 U.S. 844 (1997) ........................................................................................................... 7

*Resolute Forest Prods v. Greenpeace Int'l*,
  302 F. Supp. 3d 1005 (N.D. Cal. 2017) .......................................................................... 9, 10

*Talley v. California*,
  362 U.S. 60 (1960) ............................................................................................................. 7

*Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*,
No. 21-MC-80102-DMR, 2021 WL 4124216 (N.D. Cal. Sept. 9, 2021) ................... 10, 14, 15

*Uchida v. YouTube, LLC*,
No. 22-mc-80155-JSC, 2022 WL 4923241 (N.D. Cal. Oct. 3, 2022) ..................................... 11

*Watchtower Bible & Tract Soc'y v. Vill. of Stratton*,
536 U.S. 150 (2002) ........................................................................................................... 7

**STATUTES:**

28 U.S.C. § 1782 ..........................................................................................................*passim*

N.C.G.S.A. § 1-166 ................................................................................................................. 17

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Fredric Eshelman is a wealthy pharmaceuticals magnate from North Carolina who has embroiled himself in a series of high-profile controversies in recent years. Eshelman took offense to people "corner crossing" his ranch in Wyoming to access public lands, so he filed a federal lawsuit against a group of hunters. Eshelman also has political connections, which he used to encourage prosecution of the hunters. These connections extend beyond Wyoming: Eshelman contributed money to support the "Stop the Steal" movement and related litigation. The civil lawsuit, criminal prosecution, and effort to reverse the results of the 2020 election all failed. Nonetheless, at least some members of the public believe Eshelman has abused his position and resources. After reading about Eshelman's exploits, in December 2022, Movant J. Doe[1] ("Doe") anonymously emailed a set of Eshelman's business associates, referring to his abuse of resources, mentioning his support of "Stop the Steal" and involvement in the Wyoming controversy, and hyperlinking two news stories. Doe suggested that Eshelman's business associates reconsider their business ties with him. Eshelman again took offense and, as appears to be his pattern, turned to the legal system for recourse.

The First Amendment protects anonymous speech, which "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334, 357 (1995). Doe, like Eshelman, is an American, as were most of the recipients of the message. Even so, Eshelman has now taken the extraordinary step of employing 28 U.S.C. § 1782—a specific procedure designed to obtain discovery for use in *foreign* proceedings—to evade the First Amendment and compel the enforcement of subpoenas and disclosure of Doe's identity by Google. Doe worries about losing anonymity and being exposed as the email author in a politically conservative community, all

---

[1] As Eshelman did in his *Ex Parte* Application, Doe uses gender-neutral pronouns, without any intention of identifying their own preferred pronouns.

while lacking the resources to defend against lawsuits Eshelman suggests he may file abroad.

Doe now moves to quash the subpoenas. First, Doe's anonymous criticisms are protected speech and Eshelman would not be able to sue for defamation in the United States. Second, Eshelman's attempted use of section 1782 to expose Doe's identity is not authorized by the statutory text and would raise serious constitutional concerns if applied in these circumstances. Third, even if section 1782 could apply when one American seeks to sue another American over their commentary on an American controversy, Eshelman's subpoenas should be denied as a brazen attempt to circumvent these constitutional protections and because it fails under the well-established test courts use to decide whether a would-be plaintiff has made a showing sufficient to breach a speaker's anonymity. Eshelman's failure to offer more than scant allusions to foreign defamation law lays bare his real focus: reaching for an inapt statute to intimidate his anonymous critic and chill further scrutiny. This Court should put a stop to this attempted end run around the First Amendment and quash the subpoenas.

## II.    STATEMENT OF FACTS

Doe is a citizen and resident of the United States. (Declaration of Movant J. Doe ("Doe Decl.") ¶ 7). Doe is the user of the email address "terrynewsomee@gmail.com." (*Id.* ¶ 3). Doe informed Eshelman they are American on December 4, 2022. (Dkt. 1-4, Declaration of Fredric N. Eshelman ("Eshelman Decl."), at Ex. 2).

Eshelman is also an American citizen. (Eshelman Decl. ¶ 1). According to his moving papers, Eshelman is "a leader in the biotech and pharmaceutical industries" and a "major philanthropist." (Dkt. 1-1, Memorandum in Support of *Ex Parte* Application ("*Ex Parte* Mem."), at 2). He has founded companies in the drug discovery and development industries. (Eshelman Decl. ¶¶ 3–4). Eshelman Ventures, LLC ("Eshelman Ventures") is his vehicle for investments in the healthcare industry. (*Id.* ¶ 4). Eshelman's career appears to be centered in North Carolina, where Eshelman Ventures is based.[2] He serves on the state university's Board of Governors and

---

[2] Eshelman Ventures is located in Wilmington, North Carolina. *See* ESHELMAN VENTURES, LLC, https://tinyurl.com/4djrur2p (last visited June 20, 2023).

chairs the Board of Visitors at the Pharmacy School of the University of North Carolina at Chapel Hill, which is named after him.[3] He also owns a large property in Wyoming. (*Id.* ¶ 8).[4]

Eshelman recently became the public face of a highly publicized "corner crossing" dispute involving his Wyoming property. "Corner crossing" is a major controversy in many Western states, where public land often abuts private ranchland and hunting preserves in a checkerboard pattern. The controversy centers on whether hunters and other users of public land unlawfully trespass when they cross a small segment of private land to get from one public parcel to another.[5] Some state legislators have proposed legislation supporting corner crossing,[6] while others oppose it.[7] Landowner associations tend to vigorously oppose such legislation,[8] while hunters and conservationists tend to favor them.

---

[3] *About Us*, ESHELMAN VENTURES, LLC, https://tinyurl.com/3c4ykve3 (last visited June 20, 2023).

[4] Eshelman owns some 23,277 acres in and near his "Elk Mountain Ranch" property. Angus M. Thuermer Jr., *Corner-cross landowner gave millions to conservatives, conservation*, WYOFILE, (March 12, 2022), https://tinyurl.com/uemc6vb6.

[5] Joseph D. Fenicle, *Corner Crossing*, THE AMERICAN SURVEYOR (Feb 9, 2023), https://tinyurl.com/22dy2y3p; Ben R. Howe, *It's Public Land. But the Public Can't Reach It*, N.Y. TIMES (Nov. 26, 2022), https://tinyurl.com/3bvmekn8.

[6] Jason Blevins, *Crossing from one parcel of public land to another in Colorado creates a private-property conundrum that's proven tough to fix*, THE COLORADO SUN (Feb. 22, 2023), https://tinyurl.com/ms74jf3d; Alex Robinson & Dac Collins, *Why Not Legalize All Corner Crossing in the West?*, OUTDOOR LIFE (May 25, 2022), https://tinyurl.com/ye23zytr.

[7] Kristen A. Schmitt, *New bill broadens "corner crossing" definition*, GOHUNT (Feb. 17, 2022), https://tinyurl.com/mru4axt3.

[8] *Corner Trespass*, UNITED PROP. OWNERS OF MONTANA, https://tinyurl.com/3e29jdbm (last visited June 20, 2023).

In 2021, four hunters used ladders to traverse from one parcel of public land to another without actually touching Eshelman's Wyoming ranch.[9] Although officers were initially reluctant to make an arrest, body cam footage captured Eshelman's ranch manager saying: "Do they realize how much money my boss has . . .  and property?"[10] The hunters were eventually prosecuted for trespass, but a jury acquitted them after two hours of deliberation.[11]

Eshelman also "filed a civil trespassing suit, demanding that the hunters pay $3 million to $7 million for property damage."[12] But the Chief Judge of the District of Wyoming rejected Eshelman's demand and granted summary judgment against him. *Iron Bar Holdings v. Cape*, — F. Supp.3d —, No. 22-CV-67-SWS, 2023 WL 3686793, at *14 (D. Wyo. May 26, 2023) ("[N]o reasonable jury could find Defendants liable for civil trespass[.]"). The media has covered the dispute extensively.[13]

Doe read about Eshelman and his corner-crossing controversy online and disapproved. (Doe Decl. ¶ 2; Eshelman Decl. at Ex. 1). Doe emailed several companies associated with Eshelman Ventures, urging the recipients to consider dropping their relationship with Eshelman because "Eshelman [sic] is a piece of shit." (Eshelman Decl. at Ex. 1). Doe gave two examples (along with hyperlinks to *WyoFile* news articles) of why Eshelman deserved that crude epithet: (1) Eshelman "sent $2.5 million dollars to the 'Stop the Steal' movement," and (2) Eshelman

---

[9] Fenicle, *Corner Crossing*, *supra* note 5.

[10] Angus M. Thuermer Jr., *Corner-crossing video: 'Do they realize how much money my boss has?'*, WYOFILE (March 1, 2022), https://tinyurl.com/fv6hnwse.

[11] Howe, *It's Public Land. But the Public Can't Reach It*, *supra* note 5.

[12] Howe, *supra* note 5.

[13] *See* Theurmer, *Corner-crossing video*, *supra* note 10; Thuermer *Corner-cross landowner gave millions to conservatives, conservation*, *supra* note 4; Angus M. Thuermer Jr., *Prosecutor seeks to drop new charges in corner-crossing case*, LARAMIE BOOMERANG (May 11, 2022), https://tinyurl.com/2mkjp7nz; Kristen A. Schmitt, *Owner of ranch says corner crossing hunters caused over $7 million in damages*, GOHUNT (Sep. 12, 2022), https://tinyurl.com/htyd8zka.

"abused police resources by repeatedly sending game wardens and officers after hunters that were 'corner-crossing' into public land." (*Id.*; *see also* Doe Decl. ¶¶ 6–7). Of the companies receiving the email, three were located in Eshelman's home state of North Carolina; two were in New York; and one each was in Florida, Texas, California,[14] and India. (Declaration of Paul Alan Levy ("Levy Decl."), ¶ 4).

Doe also left a voicemail via Eshelman Ventures' contact form, expressing similar negative sentiments about Eshelman. (Eshelman Decl. at Ex. 2). Doe offered their message "from one American to another," making clear that they are an American citizen. (*Id.*; Doe Decl. ¶ 7).

On December 7, 2022, counsel for Eshelman sent Doe a "Cease and Desist Letter" addressed to the "terrynewsomee@gmail.com" email address. (Doe Decl. at Ex. A). Eshelman's letter asserted, without legal support, that Doe's statements that Eshelman had "abused police resources" in response to the Wyoming corner-crossing dispute were "demonstrably false and defamatory *per se*," but admitted that Eshelman had called in law enforcement and had procured the filing of criminal charges against the hunters. (*Id.*). The letter demanded that Doe retract their statements. (*Id.*). Doe responded to Eshelman's letter via email, saying, among other things: "Do not contact me again. There is no veiled threat in saying 'fuck Fred.' I just don't like him"; "My comments cannot be interpreted as defamatory as they are merely my own opinion"; "I am not going to send any more e-mails about Fred because I have said my piece and he's not worth my time anymore." (Doe Decl. at Ex. B).

Nonetheless, Eshelman proceeded to take legal action against Doe. On January 13, 2023, Eshelman filed an *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 against Google LLC, seeking subpoenas to learn from Google the identity of an anonymous American citizen who criticized him in a single email. (Dkt. 1, *Ex Parte* Application ("Application"); *see*

---

[14] Eshelman claims that by sending their email, Doe "published in Germany and India to two companies: Carbon3D and 6 Degrees PR." (*Ex Parte* Mem. at 5). However, Carbon3D appears to be based in Redwood City, CA and Eshelman has provided no supporting evidence that any recipient was in Germany. (Levy Decl. ¶¶ 4–5).

*also Ex Parte* Mem. at 1, 3). As grounds for the request, Eshelman purportedly intends to file two defamation actions against Doe in foreign courts, claiming that the email was sent to "two international business contacts." Neither the application nor Eshelman's supporting declaration alleges that Eshelman suffered any injury to his reputation in either of the two foreign countries, Germany and India. (*Id.*).

Google responded to Eshelman's application, asking that both Google and the account holder be permitted to move to quash the subpoenas if necessary and reserving the right to do so on First Amendment and other grounds. (Dkt. 17, Resp. to Court's Order re: Magistrate Judge Jurisdiction at 3–4). On May 9, 2023, the Court granted the application and ordered that "Google and each account user whose information is sought may file—no later than 30 days after service or notice—a motion to quash or modify the subpoenas before this Court." (Dkt. 18, Order).

On May 22, 2023, Google emailed terrynewsomee@gmail.com, informing Doe that the email "serve[ed] as notice to you that Google may produce information related to your Google account in response to this subpoena" if Doe did not move to quash or lodge another "type of formal objection." (Doe Decl. at Ex. C). Doe now moves to quash Eshelman's subpoenas in their entirety.[15]

## III.    ARGUMENT

### A.    Eshelman would not be able to sue for defamation in the United States because the First Amendment protects Doe's anonymous criticisms.

Doe took part in a fundamentally American tradition by exercising their First Amendment rights to speak freely, anonymously, and critically of a rich and powerful American for abusing his power. Now the subject of that criticism seeks to use the judicial system to harass and

---

[15] Anonymous speakers like Doe have standing to move to quash subpoenas seeking their identifying information. Under Federal Rule of Civil Procedure 45(d)(3)(A), this Court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." *Sines v. Kessler*, No. 18-80080-JCS, 2018 WL 3730434, at *9 (N.D. Cal. Aug. 6, 2018).

1   intimidate his critic. The U.S. Constitution protects Doe's anonymous criticism and would

2   prevent Eshelman from bringing suit for defamation in the United States.

3     The First Amendment reflects our "profound national commitment" to "robust" and even

4   "unpleasantly sharp" debate and criticism. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

5   The First Amendment also protects the right to speak anonymously. *Watchtower Bible & Tract*

6   *Soc'y v. Vill. of Stratton*, 536 U.S. 150, 166–67 (2002); *McIntyre*, 514 U.S. at 342; *see also Talley*

7   *v. California*, 362 U.S. 60, 62 (1960). As discussed in these cases, anonymous or pseudonymous

8   writings have played an important role over the course of history, from Shakespeare to Mark

9   Twain to the authors of the Federalist Papers. "Under our Constitution, anonymous

10  pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy

11  and of dissent." *McIntyre*, 514 U.S. at 357. And by now, it is beyond dispute that the First

12  Amendment applies to online speech. *See Reno v. ACLU*, 521 U.S. 844, 885 (1997).

13    Not only does the First Amendment confer these freedoms, it also constrains judicial

14  responses to requests from both public and private parties to employ the power of the court to

15  seek a remedy against the alleged wrongful speech of another. *Org. for a Better Austin v. Keefe*,

16  402 U.S. 415 (1971); *N.Y. Times Co.*, 376 U.S. at 265. A court in this district was among the first

17  to recognize the chilling effect of enforcing liberal rules of discovery to identify anonymous

18  speakers, observing that "[p]eople who have committed no wrong should be able to participate

19  online without fear that someone who wishes to harass or embarrass them can file a frivolous

20  lawsuit and thereby gain the power of the court's order to discover their identities." *Columbia Ins.*

21  *Co. v. seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999).

22    Although he claims an intent to file foreign defamation suits, Eshelman relies on

23  California law to label but a single statement—that Eshelman "abused police resources"—

24  defamatory *per* se. (*Ex Parte* Mem. at 9 & n.3 (citing *Barnes-Hind, Inc. v. Superior Ct.*, 181 Cal.

25  App. 3d 377, 385 (1986)). Whatever Eshelman plans overseas, and those plans are suspect, Doe's

26  statements undoubtedly receive First Amendment protection here in the United States. As a

27  limited-purpose public figure, Eshelman would need to plead, and ultimately show, that the

28  challenged statements are false statements of fact and were made with "actual malice." *See Planet*

*Aid, Inc. v. Reveal*, 44 F.4th 918, 928 (9th Cir. 2022). He can't.

*First*, Doe's statements are quintessential statements of protected opinion, not actionable statements of facts. *See Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021) (defamation claim "foreclosed by the First Amendment" when contested statement amounts to opinion rather than "assertion of objective fact" (cleaned up)). Opinions are not actionable because "there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974). To distinguish between protected opinions and actionable statements of fact, courts consider the totality of circumstances, including the "general tenor" of the statements; the type of language used, including "figurative," "hyperbolic," or misspelled; and whether the statement is provably true or false. *Herring Networks*, 8 F.4th at 1157 (quoting *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995)). California courts call this inquiry looking at the overall "gist" of the statements. *Balla v. Hall*, 59 Cal. App. 5th 652, 677–78 (2021) (citations omitted).

One critical factor that a court must consider in applying this standard is whether the speaker disclosed the underlying facts on which their assertions are based. In *Herring Networks*, for example, the Ninth Circuit affirmed the dismissal of a defamation action, concluding that talk show host Rachel Maddow's colorful and emphatic discussion of an article by *The Daily Beast* was protected speech. According to the court, by "disclosing the factual basis of her statement"—that is, referencing and even quoting from *The Daily Beast* article—Maddow made clear "that the contested statement was merely her own interpretation of the facts presented." *Herring Networks*, 8 F.4th at 1159–60 (cleaned up).

Here, the "gist" of Doe's email is obvious: based on the conduct described in some news articles they read and then linked to, Doe is of the personal opinion that "Esheman [sic] is a piece of shit." (Eshelman Decl. at Ex. 1). And, as in *Herring Networks*, Doe's impression that Eshelman abused police resources is conveyed as Doe's interpretation of the factual information that they provide. *See also Monge v. Univ. of Pa.*, Civ. No. 22-2942, 2023 WL 3692935, at *4 (E.D. Pa. May 26, 2023) (listing cases finding that hyperlinking article was sufficient to disclose factual basis for opinion). In his affidavit, Eshelman claims he did not abuse resources because the hunters were trespassing. (Eshelman Decl. ¶ 8). But many others—including the hunters and

1   surveyors' associations, the local jury that made quick business of acquitting the hunters, and the

2   federal district court that granted summary judgment to the hunters on Eshelman's trespass

3   claims—disagree. *See supra* Statement of Facts. The First Amendment protects Doe's right to

4   voice their agreement with these community members, and disagreement with Eshelman, as to the

5   proper interpretation of Eshelman's actions.

6         Moreover, as in *Herring Networks*, 8 F.4th at 1160, Doe's language surrounding the

7   challenged statement underscores that Doe was offering their personal perspective on Eshelman

8   and his entanglement in corner crossing disputes. By beginning their email with the colorful but

9   not literal description that "Eshelman [sic] is a piece of shit," Doe put the recipients on notice that

10   the email was going to be opinionated. The recipients also likely did not take Doe's assertions

11   literally because Doe misspelled their subject's name. *See Highfields Capital Mgmt., L.P. v. Doe*,

12   385 F. Supp. 2d 969, 973 (N.D. Cal. 2005) (finding relevant that "[m]any of the postings" at issue

13   "include misspellings, grammatical errors, and/or incomplete thoughts and sentences").

14         *Second*, Eshelman is a public figure and there is no evidence of actual malice. Under the

15   Ninth Circuit's three-part test, Eshelman would be treated as a limited-purpose public figure for

16   whom "actual malice" is an element of his *prima facie* case. *See Planet Aid, Inc*, 44 F.4th at 925.

17   First, there was a preexisting "public controversy" over the extent to which corner crossings at the

18   intersection of private and public land should be treated as trespass. This issue received

19   significant media attention and is a "real dispute" that "affects the general public or some segment

20   of it." *See id.* at 925–26. Second, there can be no question that Doe's statement about abuse of

21   police resources was "related to [Eshelman's] participation in the controversy": Doe expressed

22   their belief that Eshelman abused police resources by pressuring law enforcement to respond to

23   corner crossing. *Id.* at 927–28. And third, Eshelman "voluntarily injected [himself] into the

24   controversy" by, among other things, suing people who allegedly trespassed into his property by

25   corner crossing. *See id.* at 926–28.

26         *Finally*, because he is a limited-purpose public figure, Eshelman could plead a defamation

27   claim only by submitting "plausible" and "specific" allegations of "actual malice"—that is, that

28   the statement was made with "knowledge of its falsity or with reckless disregard for whether it

was false." *Resolute Forest Prods. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017) (describing First Amendment requirement of plausibly pleading actual malice as "demanding burden" (citing, *inter alia*, *N.Y. Times*, 376 U.S. at 280; *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015))). And to ultimately prevail on his claim, Eshelman would have to show by clear and convincing standard that, at the very least, Doe "entertained serious doubts as to the truth" of their statements. *Makaeff v. Trump Univ.*, 715 F.3d 254, 270 (9th Cir. 2013) (citation omitted). He has not and cannot because none exists. Nor can Eshelman argue that Doe had some duty to investigate the veracity of the *WyoFile* article before speaking because Eshelman has pointed to no "obvious reasons to doubt the truthfulness of the original speaker," *id.* at 271 (internal quotation marks, citation omitted), and Doe is aware of none.

The First Amendment protects Doe's anonymous criticism of Eshelman. Perhaps recognizing the strength of these protections and the risk that a defamation suit here would go the way of his futile litigation efforts in Wyoming, Eshelman attempts to sidestep the Constitution. He seeks to use a federal statute designed to gather evidence for use in *foreign* proceedings. But this effort fails too.

**B. Section 1782 does not authorize Eshelman's attempted end run around the First Amendment.**

Eshelman cannot meet the minimum statutory requirements necessary to invoke section 1782. Section 1782 authorizes federal courts to grant an application for discovery only if three statutory requirements are met: (1) the person from whom discovery is sought resides or is found in the district where the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by an interested person. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 249 (2004). "However, simply because a court has the authority under § 1782 to grant an application does not mean that it is required to do so." *Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-MC-80102-DMR, 2021 WL 4124216, at *2 (N.D. Cal. Sept. 9, 2021). If the three statutory requirements are met, courts then consider four discretionary factors in deciding whether to grant discovery: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign

tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign

government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether

the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other

policies of a foreign country or the United States"; and (4) whether the request is "unduly

intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

**1. The text of Section 1782 does not authorize the subpoenas.**

Eshelman's subpoena application fails to satisfy the second statutory requirement that the

discovery sought be "for use in a [foreign] proceeding." 28 U.S.C. § 1782(a); *Intel*, 542 U.S. at

246. A foreign proceeding must be in "reasonable contemplation," even if it need not be pending

or imminent. *Intel*, 542 U.S. at 259. The absence of facts "about the nature of the [foreign]

'proceeding'" cuts against a determination that this factor is met. *Khrapunov v. Prosyankin*, 931

F.3d 922, 925–26 (9th Cir. 2019). Indeed, applicants "must show that the proceeding is not

speculative, and is 'more than just a twinkle in counsel's eye.'" *Leutheusser-Schnarrenberger v.*

*Kogan*, No.18-MC-80171-JSC, 2018 WL 5095133, at *3 (N.D. Cal. Oct. 17, 2018). Applying this

standard, a foreign defamation proceeding is not in "reasonable contemplation" under section

1782 where the application lacks any evidence suggesting the statements at issue "could be

considered defamatory." *Uchida v. YouTube, LLC*, No. 22-MCc-80155-JSC, 2022 WL 4923241,

at *2 (N.D. Cal. Oct. 3, 2022).

Here, Eshelman's barebones section 1782 application falls short of demonstrating that the

evidence sought will be used in a reasonably contemplated foreign proceeding. Although

Eshelman states an intent to file defamation claims in Germany and India, he fails to provide a

sliver of evidence that statements made by Doe would be actionable there. Instead, he merely

footnotes the elements of German and Indian defamation law. (*Ex Parte* Mem. at 9 n.4).

Eshelman says he has "retained defamation counsel," but that fact is insufficient to satisfy section

1782's second statutory requirement—after all, wealthy individuals often have firms and lawyers

on retainer.[16] (*Id*. at 4); *see Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d

---

[16] Although Eshelman's application says he has "retained defamation counsel," his declaration

1    113, 124 (2d Cir. 2015) (merely retaining counsel and possibility of future litigation cannot

2    satisfy second statutory factor). The use of section 1782 as a tool for discovery is "not without

3    some limit." *Khrapunov*, 931 F.3d at 925. This Court need not decide the precise contours of that

4    limit because Eshelman's thin application to unmask an anonymous American does not satisfy a

5    central textual requirement of section 1782 and may be denied on these grounds alone.

6        **2.  The Court should construe the text of Section 1782 to avoid raising serious
             constitutional concerns.**

7

8        "[T]he canon of constitutional avoidance" counsels courts to "construe ambiguous

9    statutory language" to "avoid serious constitutional doubts." *FCC v. Fox Television Stations, Inc.*,

10   556 U.S. 502, 516 (2009); *see also Fair Hous. Council of San Fernando Valley v.*

11   *Roommate.com, LLC*, 666 F.3d 1216, 1223 (9th Cir. 2012) (Courts have "a duty to consider

12   constitutional concerns and to adopt an interpretation that avoids ruling on the constitutionality of

13   a statute, if [they] can fairly do so.").

14       Applying section 1782 under these circumstances would undoubtedly raise serious

15   constitutional concerns. Doe exercised their rights under the First Amendment to anonymous

16   speech to express their critical opinion of Eshelman. The enforcement of Eshelman's subpoenas

17   against an American citizen who criticized another American would eviscerate Doe's anonymity.

18   It would also raise serious questions about section 1782's threat to scores of other Americans

19   exercising their First Amendment rights online. As explained above, section 1782's "for use in a

20   proceeding" requirement demands more than the mere retention of counsel and the stated intent to

21   _____

22   does not. (*Compare Ex Parte* Mem. at 5, *with* Eshelman Decl.). And because neither document

23   clarifies that the retained counsel is for litigation in Germany and India, it is entirely possible that

24   the "retained counsel" refers only to the Virginia-based defamation lawyer representing him in

25   this proceeding. Similarly, Eshelman's failure to proffer the pleadings, let alone any details of

26   those pleadings, that he allegedly plans to file undercuts both the bona fides of his claimed intent

27   to file abroad as well as the Court's ability to apply a *Dendrite / Highfields* analysis. *See infra*

28   Section III(C)(2)(a).

sue a person for defamation in a foreign jurisdiction. The Court should be rigorous in applying that requirement here and adopting a construction of the statute that avoids the serious constitutional concerns raised by Eshelman's application.

### C. The Court should deny Eshelman's misuse of Section 1782 as an attempt to circumvent the First Amendment and the demanding standard for protecting anonymous speakers.

Even if Eshelman's application satisfies section 1782's text, the subpoenas should be quashed under that statute's discretionary factors. Courts have long recognized the need to balance First Amendment rights, including to anonymity, with affording parties the discovery they need to prove claims based on allegedly wrongful speech. *See supra* at 7 (citing *seescandy.com*, 185 F.R.D. at 578). As such, courts in this district consider the First Amendment interests at stake under both the third and fourth *Intel* factors used to evaluate section 1782 applications. Here, Eshelman's application runs afoul the third and fourth discretionary *Intel* factors because it is a flagrant attempt to circumvent America's commitment to free speech and because it is unduly burdensome under the well-established test for considering whether to reveal the identity of an anonymous speaker. Accordingly, the Court should exercise its discretion and quash Eshelman's subpoenas to vindicate core constitutional rights, protect Doe's anonymity as a speaker, and prevent pernicious gamesmanship of discovery rules.

### 1. Enforcing the subpoenas would allow the targets of criticism to circumvent the United States's policy of protecting free speech.

The Court should deny Eshelman's bald attempt to circumvent this country's First Amendment policies and "profound national commitment" to free speech. *See N.Y. Times Co.*, 376 U.S. at 270. Because of this commitment, the third discretionary *Intel* factor weighs against a section 1782 application where the sought discovery would "aid in punishing speech that would be protected in this country." *In re Planning & Dev. of Edu., Inc.*, No. 21-MC-80242-JCS, 2022 WL 228307, at *4 n.3 (N.D. Cal. Jan. 26, 2022); *see also In re Anahara*, No. 22-MC-80063-JCS, 2022 WL 783896, at * 3 n.1 (N.D. Cal. Mar. 15, 2022) (U.S. policy of protecting freedom of speech would be relevant to circumvention analysis when speech in question is not defamatory). When granting Eshelman's application, this Court found "somewhat curious . . . Dr. Eshelman's

1   reasons for bringing a defamation suit in Germany or India as opposed to the United States" given

2   the apparent nexus to the United States. (Order at 5–6). His reason, however, is clear: Eshelman

3   seeks to use the prospect of overseas litigation to intimidate Doe and chill their exercise of free

4   speech obviously protected here.

5         Eshelman's application seeks to sidestep these principles and protections. Doe exercised

6   their First Amendment rights by speaking from "one American to another." (Eshleman Decl. at

7   Ex. 2). Doe sent an anonymous email to an almost entirely American audience, discussing

8   uniquely American issues of public concern, and calling on Eshelman's business associates to cut

9   ties with Eshelman, whose "companies appear to be headquartered in the United States." (Order

10   at 5–6). But rather than filing a defamation case in the United States, Eshelman took the

11   extraordinary step of applying for a section 1782 subpoena, a process designed specifically to

12   obtain discovery for use in foreign proceedings. In his application, Eshelman does not cite a

13   single case authorizing section 1782 discovery under these circumstances. Enforcing Eshelman's

14   subpoena to reveal the identity of an American citizen who engaged in such speech would set a

15   dangerous precedent, paving the way for additional well-resourced and litigious individuals to

16   skirt the First Amendment in favor of more permissive foreign fora. The Court should therefore

17   put a stop to this attempted circumvention and deny Eshelman's application for these subpoenas.

18       **2.   Under the *Dendrite / Highfields* framework, Eshelman offers no evidentiary basis**
19           **for exposing Doe's identity and infringing their First Amendment right to anonymous speech.**

20         The Court should also quash Eshelman's subpoenas under the well-established balancing

21   test for evaluating discovery requests that threaten anonymous speech rights, set forth in *Dendrite*

22   *Int'l v. Doe No. 3*, 775 A.2d 756 (N.J. Super Ct. App. Div. 2001), and adopted by this Court in

23   *Highfields*, 385 F. Supp. 2d at 975 nn. 6, 7. Because the fourth discretionary *Intel* factor also calls

24   for balancing, courts in this district have applied the *Highfields / Dendrite* framework in the

25   context of considering whether a section 1782 application involving anonymous speech is

26   "unduly intrusive or burdensome." *See, e.g.*, *Tokyo Univ. of Social Welfare*, 2021 WL 4124216,

27   at *3–4 (citing *Highfields* test when considering section 1782 application seeking identifying

28

1   information of anonymous Twitter users).[17]

2        While courts have described the basic analysis in various terms, "[o]perationally, the

3   inquiry consists of two steps." *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d

4   868, 876 (N.D. Cal. 2022). "First, the party seeking the disclosure must demonstrate a prima facie

5   case on the merits of its underlying claim. Second, the court balances the need for the discovery

6   against the First Amendment interest at stake." *Id.* (citing *Dendrite*, 775 A.2d at 760–61;

7   *Highfields*, 385 F. Supp. 2d at 974–75).

8            a.   **Eshelman has not made a *prima facie* showing of defamation, even in
9                 Germany or India.**

10       Eshelman fails to meet the heightened burden required by the *Dendrite / Highfields*

11   framework to protect the right to anonymous speech, even with respect to the German and Indian

12   law cited in his papers. Eshelman was required to demonstrate *prima facie* causes of action for

13   defamation consistent with the First Amendment and under German and Indian law—the alleged

14   litigation for which he needs Doe's identity—supported by "competent evidence." *See Highfields*,

15   385 F. Supp. 2d at 975. Instead, he offers nothing but a footnote recitation of the elements of

16   _____

17   [17] Because Doe is an American living in the U.S. (Doe Decl. ¶¶ 7, 11), cases declining to apply

18   *Highfields*'s heightened standard in the absence of evidence that the anonymous speaker is

19   American are inapposite. *See, e.g.*, *hey, Inc. v. Twitter, Inc.*, No. 22-mc-80034-DMR, 2023 WL

20   3874022, *3 (N.D. Cal. June 6, 2022). Although not necessary to decide Doe's motion, First

21   Amendment balancing should still apply when the anonymous speakers are not obviously

22   Americans or America-based. For one, anonymous internet users may use privacy-enhancing

23   software that obscures their real locations. *See Choosing the VPN That's Right for You*,

24   https://tinyurl.com/wfwsuak9 (last visited Jun 20, 2023). Activists abroad also look to the United

25   States as a beacon of liberty and rely on our platforms to speak anonymously precisely *because of*

26   the First Amendment. Authoritarian nations may routinely punish speakers for dissent and

27   disfavored commentary, but courts here should not approve applications under section 1782 that

28   so clearly undermine free speech principles.

1   defamation under German and Indian law (*Ex Parte* Mem. at 9 n.4), and the barebones statement

2   that Doe's "accusations . . . are false." (Eshelman Decl. ¶ 8). This mere nod to the required

3   showing does not suffice.

4          In any event, Eshelman falls short of the *prima facie* showing that the elements are

5   satisfied here. For example, Eshelman suggests he plans to bring a private criminal prosecution

6   for defamation under German law. As in the United States, section 187 of the German Criminal

7   Code applies only to "fact[s]" and also requires some level of intent described as "despite

8   knowing better." (*See Ex Parte* Mem. at 9 n.4). Fatal to this claim, Doe's challenged statement

9   that Eshelman "abused police resources" constitutes opinion, not fact, and Eshelman has not

10  acknowledged, let alone plausibly pled, Doe's intent. *See supra* Section III(A). Eshelman's

11  defamation claim under Indian law likewise fails because he does not even plead that Doe acted

12  "maliciously."

> ### b. The harm to Doe's First Amendment right to remain anonymous outweighs Eshelman's unsupported claims of harm.

15         Because Eshelman has not made a *prima facie* showing of defamation under German or

16  Indian law, the Court need not balance the respective harms to Doe and Eshelman. But under that

17  balancing, the Court should quash the subpoenas because the balance tips sharply in Doe's favor.

18         Under *Highfields*, the Court compares "the magnitude of the harms" to Eshelman and

19  Doe's "competing interests" by exposing Doe's identity given the "specific circumstances" and

20  "context." *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 986 (N.D. Cal.

21  2015) (cleaned up). The Court also considers "whether disclosure of [Doe's] identity would deter

22  other critics from exercising their First Amendment rights." *Id.*

23         Exposure would cause Doe irreversible harm. "Anonymity, once lost, cannot be

24  regained." *Rancho Publ'ns v. Superior Court*, 68 Cal. App. 4th 1538, 1541 (1999); *Does I thru

25  XXIII v. Adv. Textile Corp.*, 214 F.3d 1058, 1072 (9th Cir. 2000) ("question whether plaintiffs

26  may use pseudonyms will be moot" if forced to reveal names in litigating anonymity). Thus,

27  should this Court deny the motion to quash and instead enforce the subpoenas, the harm resulting

28  from Doe's loss of their First Amendment anonymity would be permanent.

Doe faces far more than the loss of their First Amendment right to speak anonymously. Eshelman says he intends to file two lawsuits for defamation, one in India and one in Germany. (Application at 2; Eshelman Decl. ¶ 10). Those filings pose little obstacle to a man of Eshelman's wealth, but would impose an enormous burden on Doe, who lacks the financial resources or legal contacts to defend even one defamation claim abroad, let alone two. (Doe Decl. ¶ 8).

In addition to the financial toll of litigating overseas, Doe faces adverse social and economic consequences if unmasked. They live in a conservative area where many residents support former president Donald Trump and would strongly disagree with Doe's criticism of a major benefactor of Trump's post-election legal campaign. (*Id.* ¶ 9). It is very important to Doe to retain their anonymity to avoid being identified as being on the opposite side, politically, as their neighbors and, given the degree of polarization in the United States, being subjected to possible threats and harassment.

Eshelman, by contrast, has submitted no evidence to substantiate his alleged harm or show that identifying Doe for litigation in Germany and India is necessary. Neither his declaration, the application for subpoenas, nor the supporting memorandum contains any indication that Doe's email to Eshelman Ventures' business associates has damaged Eshelman's reputation, particularly in Germany or India where he says he plans to sue. In fact, it appears the company Eshelman claims is located in Germany is actually located in Redwood City, California. Without injury in Germany and India, Eshelman has no basis for putting Doe to the burden of responding there.

Eshelman also has additional avenues to attempt recourse should his subpoenas be quashed. He has not explained why he must turn to courts in Germany and India to vindicate his reputation rather than in North Carolina. And while Eshelman's declaration asserts that he cannot sue Doe without first knowing their name (Eshelman Decl. ¶ 10), North Carolina law expressly authorizes suits against Doe defendants, *see* N.C.G.S.A. § 1-166. It is not at all unusual for plaintiffs seeking to hold anonymous defendants accountable for allegedly wrongful speech to file suit against a Doe defendant in the plaintiff's home state, and then use subpoenas to obtain the name of the defendant. *See, e.g.*, *Alvis Coatings v. John Does 1-10*, No. 3L94 CV 374-H, 2004 WL 2904405, at *1 (W.D.N.C. Dec. 2, 2004).

Eshelman's attempt to learn Doe's identity also raises serious questions of impropriety and the reasons underlying this proceeding, further tipping the balance of harms in Doe's favor. Considering the serious weaknesses in Eshelman's purported defamation claims, it is hard to avoid the inference that the only reason for threatening litigation in Germany and India is to oppress Doe. A court in this district recently addressed a similar inference of impropriety in a case involving an anonymous speaker and criticism of a wealthy individual. In *In re DMCA*, 608 F. Supp. 3d 868, a "mysterious entity called Bayside Advisory," using a statutory procedure created to enable the rapid identification of alleged copyright infringers, obtained a subpoena against the author of some tweets that made fun of a venture capitalist. *Id.* at 874. The record raised serious questions about how and why Bayside Advisory had acquired the copyright in the photos and whether the company was seeking to vindicate copyright harms or instead acting as a stalking horse for the venture capitalist to find out who was criticizing him. Because the company failed to justify its use of the statutory procedure, Judge Chhabria found that the balance of harms strongly favored the anonymous Twitter user. *Id.* at 881–83. Here, too, Eshelman's papers raise more questions than they answer about why he has resorted to section 1782 instead of simply suing Doe in North Carolina, seeking leave to take early discovery, and domesticating his subpoena in Santa Clara County Superior Court. Thus, while Eshelman still would have recourse should the Court quash the subpoenas, Doe will have no similar recourse should the Court enforce the subpoenas because their constitutional interest in anonymity would be moot. Because the balance of interests so plainly favors Doe, the Court should quash the subpoenas.

Finally, the disclosure of Doe's identity risks "deter[ring] other critics from exercising their First Amendment rights." *Music Grp. Macao Com. Offshore Ltd.*, 82 F. Supp. 3d at 986. Every day, many Americans use anonymous and pseudonymous online accounts to talk about politics, interact with communities of interest, and speak truth to power. Permitting a powerful American to expose the identity of an online critic and fellow American sends a clear message: offend the rich and powerful with your anonymous opinion online, and you might be next. And in the hands of Eshelman, these subpoenas signal that having to defend a lawsuit on the other side of the world is the price of criticizing Fredric Eshelman. This Court should reject Eshelman's

extraordinary use of a federal statute to attempt an end run around the First Amendment and the well-established standard for protecting the anonymity of speakers online.

## IV.     CONCLUSION

     For the foregoing reasons, Doe respectfully submits that the subpoenas to Google LLC should be quashed.

Dated: June 21, 2023                                  Respectfully submitted,

By: _____

Matthew T. Cagle

PAUL ALAN LEVY, (D.C. Bar No. 946400)
(*pro hac vice* application forthcoming)
plevy@citizen.org
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, D.C. 20009
Telephone: (202) 588-7725

MATTHEW T. CAGLE (CA Bar No. 286101)
mcagle@aclunc.org
HANNAH M. KIESCHNICK (CA Bar No. 319011)
hkieschnick@aclunc.org
NICOLAS A. HIDALGO (CA Bar No. 339177)
nhidalgo@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-1478